**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEXIA SA/NV; DEXIA HOLDINGS, INC.; FSA ASSET MANAGEMENT LLC; DEXIA CRÉDIT LOCAL SA, | 12-cv-4761 (JSR) |
| Plaintiffs, | |
| v. | ECF CASE |
| BEAR, STEARNS & CO. INC., THE BEAR STEARNS COMPANIES, INC., BEAR STEARNS ASSET BACKED SECURITIES I LLC, EMC MORTGAGE LLC (f/k/a EMC MORTGAGE CORPORATION), STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., J.P. MORGAN ACCEPTANCE CORPORATION I, J.P. MORGAN MORTGAGE ACQUISITION CORPORATION., J.P. MORGAN SECURITIES LLC (f/k/a JPMORGAN SECURITIES INC.), WAMU ASSET ACCEPTANCE CORP., WAMU CAPITAL CORP., WAMU MORTGAGE SECURITIES, JPMORGAN CHASE & CO., and JPMORGAN CHASE BANK, N.A., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND TO THE SUPREME COURT OF NEW YORK**

# Table of Contents

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 5

III.    ARGUMENT ................................................................................................. 7

    A.  Standards Applicable To Defendants' Removal ................................................ 7

    B.  The Court Does Not Have "Related To" Bankruptcy Jurisdiction .............................. 7

        1.  The Contours of "Related To" Jurisdiction ......................................... 7

        2.  This Action Is Not Related To Any Of The Thirteen Bankruptcies on Which
            Defendants Rely ................................................................. 8

            a)  The Bear Stearns Defendants' Purported Indemnification Claims Were
                Never Asserted or Settled ................................................ 9

            b)  The JPMorgan Defendants' Purported Indemnification Claims Were
                Never Asserted, Disallowed and Settled .................................. 11

    C.  Even If the Court Were to Find "Related To" Jurisdiction, Abstention and
        Remand Is Warranted Pursuant to 28 U.S.C. § 1334(c) ....................................... 14

        1.  Remand Is Required By 28 U.S.C. § 1334(c)(2) ................................... 14

        2.  Equitable Remand Under 28 U.S.C. § 1334(c)(1) Is Warranted ..................... 16

    D.  The Edge Act Does Not Apply ................................................................. 19

IV.    CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allstate Ins. Co. v. Ace Sec. Corp.,*
No. 11 Civ. 1914 (LBS), 2011 WL 3628852 (S.D.N.Y. Aug. 17, 2011) ...............................15

*Allstate Ins. Co. v. CitiMortgage, Inc.,*
11-cv-1927 (RJS), 2012 WL 967582 (S.D.N.Y. March 13, 2012)................................. *passim*

*Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC,*
11-cv-2232 (NRB), 2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011).................................. *passim*

*Allstate Ins. Co. v. Merrill Lynch & Co.,*
11 Civ. 2280 (DAB), 2011 US Dist. LEXIS 124333 (S.D.N.Y. Aug. 15, 2011) ........... *passim*

*Am. Int'l Group v. Bank of Am.,*
820 F. Supp. 2d 555 (S.D.N.Y. 2011).............................................................................. 21-22

*Bank of Am. Corp. v. Lemgruber,*
385 F. Supp. 2d 200 (S.D.N.Y. 2005).....................................................................................23

*Bank of N.Y. v. Bank of Am.,*
861 F. Supp. 225 (S.D.N.Y. 1994)...................................................................................20, 22

*Bayerische Landesbank, N.Y. Branch v. Bear Stearns & Co., et al.,*
No. 1:12-cv-02804 (S.D.N.Y. filed Apr. 9, 2012) ....................................................................4

*Bayerische Landesbank, N.Y. Branch v. Merrill Lynch & Co., et al.*
No. 1:12-cv-03856 (S.D.N.Y. filed May 15, 2012) ..................................................................4

*Caggiano v. Pfizer, Inc.,*
384 F. Supp. 2d 689 (S.D.N.Y. 2005).....................................................................................20

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.,*
629 F.2d 786 (2d Cir. 1980)...............................................................................................19, 22

*Foy v. Vanderbilt Cap. Advisors, LLC,*
No. Civ 09-0178 RB/MEH, 2009 WL 3672921 (D.N.M. Apr. 13, 2009).............................20

*Gen. Electric Cap. Corp. v. Pro-Fac Coop., Inc.,*
01-cv-10215 (LTS), 2002 WL 1300054 (S.D.N.Y. June 11, 2002) .........................................7

*Guccione v. Bell,*
No. 06 Civ. 492 (SHS), 2006 WL 2032641 (S.D.N.Y. July 20, 2006) ............................16, 18

*In re Chateaugay Corp.*,
 213 B.R. 633 (S.D.N.Y. 1997)....................................................................................3, 10, 13

*In re Currency Conversion Fee Antitrust Litig.*,
 No. 1409, 21-95, 2003 WL 22097502 (S.D.N.Y. Sept. 10, 2003) ...........................................19

*In re Fairfield Sentry Ltd. Litig.*,
 458 B.R. 665 (S.D.N.Y. Sept. 19, 2011) ..............................................................................15

*In re Manville Forest Prods. Corp.*,
 209 F.3d 125 (2d Cir. 2000)..................................................................................................8

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
 488 F.3d 112 (2d Cir. 2007)..................................................................................................9

*In re Rockefeller Ctr. Props., Inc.*,
 272 B.R. 524 (S.D.N.Y. Bankr. 2000)..................................................................................13

*Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*,
 No. 04 Civ. 708 (GEL), 2004 WL 1048239 (S.D.N.Y. May 7, 2004) ........................16, 17, 18

*Lazard Freres & Co. v. First Nat'l Bank of Md.*,
 No. 91 Civ. 0628 (KMW), 1991 WL 221087 (S.D.N.Y. Oct. 15, 1991) ...................20, 21, 22

*Lifetime Brands Inc. v. Arc Int'l SA*,
 No. 09 Civ. 9792 (LAK), 2010 WL 454680 (S.D.N.Y. Jan. 29, 2010)...................................15

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
 639 F.3d 572 (2d Cir. 2011).......................................................................................7, 15, 18

*Samsun Logix Corp. v. Bank of China*,
 740 F. Supp. 2d 484 (S.D.N.Y. 2010)..................................................................................22

*Société d'Assurance de l'Est SPRL v. Citigroup*,
 No. 10 Civ. 4754(JGK), 2011 WL 4056306 (S.D.N.Y. Sept. 13, 2011) ........................4, 21, 22

*Weiss v. Hager*,
 11-cv-2740 (VB), 2011 WL 6425542 (S.D.N.Y. Dec. 19, 2011)...............................19, 20, 22

STATUTES

12 U.S.C. § 632 ....................................................................................... *passim*

18 U.S.C. § 152 ...............................................................................................13

28 U.S.C. § 1334 .................................................................................... *passim*

28 U.S.C. § 1447...........................................................................................................................7, 15

**OTHER AUTHORITIES**

Fed. R. Bankr. P. § 3001(a) .........................................................................................................12

Fed. R. Bankr. P. § 3002(a) ………..............................................................................................12

Dexia SA/NV, Dexia Holdings, Inc. ("DHI"), FSA Asset Management LLC ("FSAM") and Dexia Crédit Local SA ("DCL") (collectively "Dexia" or "Plaintiffs") move for an Order remanding this action to New York State Supreme Court because the Court lacks subject matter jurisdiction under 28 U.S.C. § 1334(b) (actions "related to" bankruptcy) and 12 U.S.C. § 632 (the Edge Act). Moreover, even if the Court were to find subject matter jurisdiction, in the alternative, the Court should remand the action pursuant to 28 U.S.C. § 1334(c)(2) (mandatory remand) or 28 U.S.C. §§ 1334(c)(1) (equitable remand).[1]

## I.   PRELIMINARY STATEMENT

Plaintiffs originally filed this action in New York state court asserting fraud claims under New York law against Defendants whose primary places of business are in New York, and whose misconduct giving rise to this action took place in New York. Defendants are Wall Street investment banks that created, issued and sold residential mortgage-backed securities ("RMBS") from loans they knew to be exceptionally bad, while giving the false impression and making false statements that their RMBS were prudent investments. ¶¶1, 71-74, 93-95, 136-139.[2]

Defendants' Notice of Removal (the "Removal Notice") asserts two grounds for removal: (1) "related to" bankruptcy jurisdiction, and (2) the Edge Act. ECF No. 1. As detailed below, neither supports removal and this action should be remanded.

Defendants assert that this Court has "related to" bankruptcy jurisdiction because they purportedly have indemnification claims against 13 non-defendant bankrupt entities, including

---

[1]  Pursuant to the case management plan (ECF No. 9), Plaintiffs are serving discovery requests while this Motion is pending. Plaintiffs are proceeding with discovery to meet Court-ordered deadlines, and expressly reserved the right to seek remand at the July 13, 2012 status conference.

[2]  "¶__" or "Complaint at ¶__" refers to the corresponding paragraph in the Amended Complaint dated March 20, 2012 ("Complaint"), ECF No. 1, Ex. 2.

11 entities that acted as originators of mortgages that Defendants securitized and sold to Dexia. Two other bankrupt entities – Residential Asset Securities Corp. and Residential Funding Corp. (together "RAMP") – acted as sponsor and depositor for two of the 51 securitizations at issue in this action.  ECF No. 1 (Removal Notice) at ¶¶14-20.[3]  However, to establish "related to" jurisdiction, Defendants must show that this action will have some conceivable effect on a pending bankruptcy proceeding.  Defendants have not met this requirement.  Notably, Defendants have not submitted a proof of claim in 8 of the 13 bankruptcies, and their claims have been rejected, settled, or liquidated in the other 5 bankruptcies.  Moreover, this action is not a "core" bankruptcy proceeding, and none of the bankrupt entities is a defendant here.  *Id.* at ¶15.

More specifically, the Bear Stearns defendants did not submit proofs of claim in the Accredited, AHM, BSRM, Fremont, MILA and SouthStar bankruptcies, and the bar dates for doing so have long passed.[4]  Clearly, this action does not affect any of these bankruptcies.  *See Allstate Ins. Co. v. Merrill Lynch & Co.*, 2011 US Dist. LEXIS 124333, at *8-9 (S.D.N.Y Aug. 15, 2011) ("Because Merrill did not file a proof of claim before the claims bar date [in the

---

[3] Defendants claim to have indemnification claims that could affect the following 13 bankruptcies: Accredited Home Lenders ("Accredited"), Aegis Mortgage Corp. ("Aegis"), American Home Mortgage ("AHM"), Bear Stearns Residential Mortgage ("BSRM") (as a subsidiary of Accredited), Fieldstone Mortgage Co. ("Fieldstone"), Fremont Investment & Loan ("Fremont"), Mortgage Investment Lending Associates ("MILA"), New Century Mortgage Corp. ("New Century"), Novastar Mortgage Inc. ("Novastar"), ResMae Mortgage Corp. ("ResMae"), and SouthStar Funding LLC ("SouthStar"), Residential Asset Securities Corp. ("RASC") and Residential Funding Corp. ("RFC").

[4] The Removal Notice asserts that BSABS 2006-HE8, BSABS 2007-2, MSST 2007-1, NCMT 2007-1, SACO 2006-2 and SAMI 2006-AR8 included loans originated by Accredited, Aegis, AHM, BSRM, Fremont, MILA, New Century and SouthStar.  *See* Removal Notice at ¶19.  The RMBS in these securitizations were created, issued and/or sold by Bear Stearns defendants.  *See* Complaint at ¶45.  The "Bear Stearns defendants" are Bear Stearns & Co., Inc. ("BS&Co."), the Bear Stearns Companies, Inc., Bear Stearns Asset Backed Securities I LLC ("BSABS I"), EMC Mortgage LLC ("EMC"), Structured Asset Mortgage Investments II Inc. ("SACO II").

relevant bankruptcies], Merrill fails to establish 'related to' jurisdiction").  The Bear Stearns defendants settled their claims with court approval in the Aegis and New Century bankruptcies, representing that they had "***no other claims*** against the Debtors."  Defendants' settled claims do not support "related to" jurisdiction either.  *See Merrill Lynch*, 2011 US Dist. LEXIS 124333, at *12 (no jurisdiction because "Merrill entered into a court-approved stipulation with [the debtor]").

Moreover, the JPMorgan defendants did not assert their purported indemnification claims in the Fieldstone, NovaStar, and RAMP bankruptcies.  Thus, these bankruptcies are not "related to" this action.[5]  *See Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 2011 WL 4965150, at *4 (S.D.N.Y. Oct. 19, 2011) ("The only way defendants' indemnification claims against the Bankrupt Originators can actually affect the allocation of property among the estates' creditors is if defendants have asserted their claims against the bankruptcy estates").  In addition, the JPMorgan defendants' claims were disallowed and liquidated in AHM and ResMae, and settled in New Century.  The JPMorgan defendants' disallowed, liquidated and settled claims do not support jurisdiction either.  *See In re Chateaugay Corp.*, 213 B.R. 633, 640 (S.D.N.Y. 1997) (no "related to" jurisdiction "in absence of any articulated legal basis for an indemnity action against Debtors"); *Allstate Ins. Co. v. CitiMortgage, Inc.*, 2012 WL 967582, at *5 (S.D.N.Y. March 13, 2012) (no "related to" jurisdiction "because Defendants have failed to establish that their [] claim

---

[5]  The Removal Notice asserts that JPALT 2006-A3, JPALT 2006-A5, JPALT 2006-A6, JPALT 2007-A2, JPMAC 2006-HE3, JPMAC 2006-NC1, and JPMAC 2006-RM1 included loans originated by AHM, Fieldstone, Novastar, ResMae, and New Century.  *See* Removal Notice at ¶19.  In addition, the Removal Notice asserts that RASC and RFC served as depositor and sponsor of RASC 2006-KS7, and RASC 2007-KS2.  *See id.*  The RMBS in these securitizations were created, issued and/or sold by JPMorgan defendants.  *See* Complaint at ¶45.  The "JPMorgan defendants" are JPMorgan Acceptance Corp. I ("JPM Accept."), JPMorgan Mortgage Acquisition Corp. ("JPM Mort."), JPMorgan Mortgage Securities LLC ("JPMSI"), JPMorgan Chase & Co ("JPMC&Co.") and JPMorgan Chase Bank, NA ("Chase Bank").

in the AHM bankruptcy has not already [been] fully liquidated").

Even if this Court has "related to" jurisdiction – which it does not – the Court should still remand.  New York Plaintiffs brought this action under New York law against New York Defendants in New York Supreme Court, where it can be timely adjudicated, and the outcome of this action will have no effect on the administration of any bankruptcy.  This action does not require any court to interpret federal law, let alone any bankruptcy law.  All factors supporting remand under 28 U.S.C. §§ 1334(c)(1) and (c)(2) are met, and Plaintiffs should be allowed to pursue their claims in State court.  As Judge Kaplan recently held in two factually indistinguishable cases, "the degree of relatedness to the bankruptcy cases is slim and there is just no good logical reason for these two cases to be in federal court."  *Bayerische Landesbank, N.Y. Branch v. Bear Stearns & Co., et al.*, 12-cv-2804 (S.D.N.Y. filed Apr. 9, 2012) and *Bayerische Landesbank, N.Y. Branch v. Merrill Lynch & Co., et al.*, 12-cv-3856 (S.D.N.Y. filed July 15, 2012) (collectively "*BLBNY*") (remanding to New York Supreme Court).  *See* Declaration of Jeroen van Kwawegen dated July 18, 2012 ("Van Kwawegen Decl."), Ex. 1 at 21.

Defendants also assert that this Court has federal question jurisdiction under the Edge Act because 18 of the 249,902 mortgages in the 51 offerings were originated in the Virgin Islands. Removal Notice at ¶24.  But none of Plaintiffs' claims against the only federally chartered bank in this action (Chase Bank) "involve[s] a banking arrangement ***between*** a federally chartered bank and a foreign party."  *Société d'Assurance de l'Est SPRL v. Citigroup*, 2011 WL 4056306, at *5 (S.DN.Y. Sept. 13, 2011) (emphasis added).  Rather, Plaintiffs' state law claims are based on the ***domestic*** sale of RMBS that were created, issued and sold by U.S. defendants to a U.S. plaintiff (FSAM) through the creation of U.S. trusts.  Complaint ¶¶1-34.  Defendants' reliance on the Edge Act is misplaced, and the action should be remanded.  *See CitiMortgage*, 2012 WL

967582, at *4 (a "nationally chartered bank must have potential liability on claims arising out of transactions involving international or foreign banking … to support [Edge Act] jurisdiction").

## II.        FACTUAL AND PROCEDURAL BACKGROUND

This case involves an egregious fraud perpetrated by Bear Stearns, JPMorgan and Washington Mutual ("WaMu").  For more than three years, Defendants created, issued and sold RMBS that they claimed were supported by underlying mortgages that complied with stated underwriting guidelines and were prudent investments.  ¶1.  In truth, Defendants knew that the underlying mortgages violated these standards, and that the RMBS were not prudent investments.  For example, Bear Stearns had an undisclosed policy to quickly securitize loans before they suffered from "early payment defaults" (a clear indication of mortgage fraud) in order to transfer default risks to unsuspecting investors.  ¶¶55-56.  Bear Stearns also knew from its own due diligence (including the re-underwriting of loan files conducted by its third party due diligence agents), from its role in structuring securitizations (including securitizations where Bear Stearns "structured" the offerings while third parties acted as sponsors), and from its close business relationships with the loan originators, that the loans included in the securitizations were of exceptionally poor quality.  ¶¶61-76, 142-155, 174-207.  Indeed, Bear Stearns knowingly "waived in" 50% of the mortgages that its own due diligence vendor had marked as fatally defective.  ¶¶71-76.  JPMorgan similarly waived in 51% of the mortgages that its due diligence vendor had marked as fatally defective—even after falsely assuring investors that it had "materially tightened" its loan underwriting standards and would be "even more conservative" in originating mortgages.  ¶¶136-139.  WaMu knowingly off-loaded poor quality loans from its own balance sheet into securitizations because it knew the loans were likely to default.  ¶¶108-116.

On January 19, 2012, Plaintiffs filed a complaint in New York Supreme Court asserting claims for fraud, fraudulent inducement, aiding and abetting fraud and fraudulent inducement, negligent misrepresentation and successor-liability under New York law.  ECF No. 1, Ex. 1.  On May 18, 2012, Plaintiffs filed and served an amended complaint asserting the same set of purely New York law claims.  ECF No. 1, Ex. 2 (the "Complaint").

As alleged in the Complaint, Defendants collectively securitized at least $325 billion in mortgages from 2005 to 2007.  ¶¶5, 292.  Plaintiff FSAM purchased over $1.6 billion worth of Defendants' RMBS in 51 offerings between 2005 and 2007 (the "Certificates").  ¶2.  The 51 offerings at issue are collectively supported by 249,902 mortgages.  Plaintiffs assert claims against the entities that purchased the underlying loan pools, that deposited those loan pools into trusts that they controlled, that structured the trusts into RMBS, and that sold the RMBS to Plaintiffs.  ¶¶1, 236-284.  Except for EMC, which acted as sponsor and loan originator for 9 securitizations, none of the originators of the underlying loans is a defendant in this action. ¶¶19-34.  Plaintiffs FSAM and DHI and all Defendants were located in the U.S. at all relevant times.  ¶¶13-34.  FSAM, DHI, and the Bear Stearns and JPMorgan defendants are all incorporated in Delaware and have their primary place of business in New York.  ¶¶13, 16-30.

On June 18, 2012, Defendants removed this action asserting that (i) the action is "related to" bankruptcy proceedings of unrelated third parties (even though Defendants' purportedly related indemnification claims were never asserted, settled or disallowed in those bankruptcies), and (ii) the Edge Act purportedly applies (even though Plaintiffs are not asserting claims against Chase Bank based on its involvement in any foreign or international banking transaction).

### III.    ARGUMENT

#### A.    Standards Applicable To Defendants' Removal

Civil actions brought in state court may be removed to this Court "only if the federal courts have original jurisdiction over the matter." *Credit Suisse*, 2011 WL 4965150, at *2, citing 28 U.S.C. § 1441(a). "When challenged, the party seeking removal bears the burden of establishing that the federal district court has jurisdiction." *CitiMortgage*, 2012 WL 967582, at *2. On a motion for remand, the Court "must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff," and "out of respect for the limited jurisdiction of federal courts and the rights of states, [courts] must resolve any doubts against removability." *Id.* (citations omitted). If the Court determines that it lacks jurisdiction, the case must be remanded. 28 U.S.C. § 1447.

#### B.    The Court Does Not Have "Related To" Bankruptcy Jurisdiction

##### 1.    The Contours of "Related To" Jurisdiction

An action is "related to" bankruptcy only "if the action's outcome might have any conceivable effect on the bankrupt estate." *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011). "Conceivable effects typically manifest themselves by altering the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors." *CitiMortgage*, 2012 WL 967582, at *4. Although contingent outcomes can satisfy the conceivable effects test, "the potential applicability of indemnification provisions is not by itself the equivalent of an effect on an indemnifier's bankruptcy proceedings." *Credit Suisse*, 2011 WL 4965150, at *4. *See also Gen. Electric Cap. Corp. v. Pro-Fac Coop., Inc.*, 2002 WL 1300054, at *2 (S.D.N.Y. June 11, 2002) ("potential ramifications are insufficient to render the claims that have been asserted against the non-debtor

Defendants 'related to' Debtor's bankruptcy proceeding").  Rather, "*[t]he only way* defendants' indemnification claims against the Bankrupt Originators can actually affect the allocation of property among the estates' creditors is *if defendants have asserted their claims* against the bankrupt estates."  *Credit Suisse*, 2011 WL 4965150, at *4 (emphasis added).

Defendants' purported indemnification rights arose when they executed loan purchase and underwriting agreements that allegedly contain indemnification provisions.  *See Credit Suisse*, 2011 WL 4965150, at *5 ("An indemnification right 'arises at the time the indemnification agreement is executed,' and it constitutes a claim under the Bankruptcy Code even if the act giving rise to the indemnification has not yet occurred"); *In re Manville Forest Prods. Corp.*, 209 F.3d 125, 129 (2d Cir. 2000) ("a right to payment based on a written indemnification contract arises at the time the indemnification agreement is executed," and constitutes "a valid contingent claim" in bankruptcy).  Thus, to support "related to" jurisdiction, Defendants must show that they timely filed proofs of claim asserting contingent indemnification claims in the cited bankruptcies.  *See Credit Suisse*, 2011 WL 4965150, at *4; *Merrill Lynch*, 2011 U.S. Dist. LEXIS 124333, at *8-9 ("Because Merrill did not file a proof of claim before the claims bar date [in the relevant bankruptcies], Merrill fails to establish 'related to' jurisdiction").

      2.     <u>This Action Is Not Related To Any Of The Thirteen Bankruptcies on Which Defendants Rely</u>

Defendants have not shown that they have valid indemnification claims, or that they have asserted their purported indemnification claims in any of the bankruptcies that they rely upon – namely, the bankruptcies of Accredited, Aegis, AHM, BSRM (as a subsidiary of Accredited), Fieldstone, Fremont, MILA, New Century, NovaStar, the two RAMP entities, ResMae, and SouthStar.  *See* Removal Notice at ¶¶2-8.  Specifically, the Bear Stearns defendants filed *no*

proofs of claim that could be affected by this action in the Accredited, AHM, BSRM, Fremont, MILA, and SouthStar bankruptcies, and their claims in the Aegis and New Century bankruptcy were settled.  Similarly, the JPMorgan defendants have filed **no** proofs of claim that could be affected by this action in the Fieldstone, NovaStar, and RAMP bankruptcies, their claims were settled in the New Century bankruptcy, and disallowed or liquidated in AHM and ResMae.[6]

### a)  The Bear Stearns Defendants' Purported Indemnification Claims Were Never Asserted or Settled

As the following table makes clear, the Bear Stearns defendants did not file proofs of claim in the Accredited, AHM, BSRM, Fremont, MILA, and SouthStar bankruptcies (and the court-ordered bar dates have expired without any Bear Stearns defendant having ever done so). Their claims in the Aegis and New Century bankruptcies were settled years ago:

| Bankruptcy | Securitization(s) in Removal Notice | Defendants[7] | Claims Bar Date[8] | Proof of Claim |
|---|---|---|---|---|
| Accredited | BSABS 2006-HE8 SACO 2006-2 | EMC, BSABS I, BS&Co. | 10/6/2009 | No |
| AHM | SACO 2006-2 | EMC, BSABS I, BS&Co. | 1/11/2008 | No |
| BSRM | BSABS 2006-HE8 SACO 2006-2 | EMC, BSABS I, BS&Co. | 10/6/2009 | No |
| Fremont | NCMT 2007-1 | BSABS I, BS&Co. | 11/10/2008 | No |
| MILA | BSABS 2007-2 SACO 2006-2 | EMC, BSABS I, BS&Co. | bankruptcy closed | No |
| SouthStar | SACO 2006-2 SAMI 2006-AR8 | EMC, SAMI II, BS&Co. | bankruptcy closed | No |

---

[6] Defendants' Removal Notice does not identify any indemnification claim of any WaMu defendant against a bankrupt entity that could be affected by this action.  Any purported WaMu claims against a bankrupt entity are therefore irrelevant for determining this Court's jurisdiction. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("In determining whether jurisdiction is proper, we look only to the jurisdictional facts alleged in the Notices of Removal").

[7]  Complaint ¶¶19, 45, 141.

[8]  Van Kwawegen Decl., Exs. 2-8.

| Aegis | BSABS 2007-2 | EMC, BSABS I, BS&Co. | 2/1/2008 | Settled (February 2009)[9] |
| New Century | BSABS 2007-2 SACO 2006-2 | EMC, BSABS I, BS&Co. | 8/31/2007 | Settled (May 2008)[10] |

As a result, this action is not "related to" any of these bankruptcies. *See Merrill Lynch*, 2011 U.S. Dist. LEXIS 124333, at *8-9, *12 (no jurisdiction "[b]ecause Merrill did not file a proof of claim before the claim bar date for [] five Bankruptcies" and "Merrill entered into a court-approved stipulation with [the debtor]"); *Credit Suisse*, 2011 WL 4965150, at *5 (no jurisdiction because "defendants have not pointed to any court that has excused their failure to file proofs of claim for indemnification.…[n]or is it appropriate for a court to speculate on the viability of any such future attempt to have those failures excused").

Court orders in each of these bankruptcies confirm that the Bear Stearns defendants' unasserted claims have been discharged or that the bankruptcies were closed, thereby further refuting "related to" jurisdiction. *See In re Chateaugay Corp.*, 213 B.R. 633, 640 (S.D.N.Y. 1997) (no "related to" jurisdiction "in absence of any articulated legal basis for an indemnity action against Debtors").[11]

---

[9] Van Kwawegen Decl., Ex. 9.

[10] Van Kwawegen Decl., Ex. 10.

[11] *See* Van Kwawegen Decl., Ex. 2 at 8 (ordering that any entity that fails to file a proof of claim in the Accredited and BSRM bankruptcy "is forever barred, estopped, and enjoined from asserting any Prepetition Claim against any of the Debtors (or filing a proof of claim with respect thereto), and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Prepetition Claim"); *Id.* at Ex. 9 at ex. A p. 8 (order approving Bear Stearns' settlement of claims in the Aegis bankruptcy, including a waiver by Bear Stearns and EMC of "any right to make any demand for payment, assert any claim or action for collection or otherwise exercise or attempt to exercise any rights or remedies to recover any amounts relating to the Proofs of Claim from the Debtor," and an acknowledgment that Bear Stearns and EMC have "***no other claims*** against the Debtors except for those proofs of claims described in this Stipulation") (emphasis added); *Id.* at Ex. 25 at 49 ("Holders of EPD Claims and/or Breach of Warranty Claims that are required, but fail, to return an EPD/Breach Claims

10

**b) The JPMorgan Defendants' Purported Indemnification Claims Were Never Asserted, Disallowed and Settled**

This action has no relation to the AHM, Fieldstone, New Century, NovaStar, ResMae or RAMP bankruptcies because JPMorgan has not filed proofs of claim or their claims have already been settled, disallowed or liquidated.  As the following table makes clear, the JPMorgan defendants did not file proofs of claims in the Fieldstone, NovaStar or RAMP bankruptcies, and their claims in the AHM, New Century and ResMae bankruptcies were settled, disallowed or liquidated:

| Bankruptcy | Securitization(s) in Removal Notice | Defendants[12] | Claims Bar Date[13] | Proof of Claim |
|---|---|---|---|---|
| Fieldstone | JPMAC 2006-HE3 | JPM Mort., JPM Accept., JPMSI | 4/1/2008 | No |
| NovaStar | JPMAC 2006-HE3 | JPM Mort., JPM Accept., JPMSI | bankruptcy closed | No |
| RAMP | RASC 2006-KS7 RASC 2007-KS2 | JPMSI | n/a | No |
| New Century | JPMAC 2006-NC1 | JPM Mort., JPM Accept., JPMSI | 8/31/2007 | Settled (January 2010) |
| AHM | JPALT 2006-A3 JPALT 2006-A5 JPALT 2006-A6 JPALT 2007-A2 | JPM Mort., JPM Accept., JPMSI | 1/11/2008 | Disallowed and liquidated |
| ResMae | JPMAC 2006-RM1 JPMAC 2006-HE3 | JPM Mort., JPM Accept., JPMSI | bankruptcy closed | Disallowed |

The court-ordered bar dates expired in the Fieldstone and NovaStar bankruptcies without

Questionnaire by the applicable bar date shall be forever barred from asserting such Claims against the Debtors, the Plan Trust, or any of their Assets."); *Id.* at Exs. 11, 12 at 49 (discharging Fremont from "any and all Claims, including without limitation, all demands, liabilities, and Claims, that arose before the Confirmation Date [June 11, 2010]"); *Id.* at Ex. 5 at 49 (closing MILA bankruptcy in June 2012); *Id.* at Ex. 10 at ex. A, p. 3 (approving settlement of EMC's claims in the New Century bankruptcy, including EMC's representation that "other than the [settled] claims, it has no claims against any of the Debtors"); *Id.* at Ex. 6 (closing SouthStar bankruptcy in April 2011 after the trustee liquidated and distributed the SouthStar estate).

[12] *See* Complaint at ¶¶45, 141.

[13] Van Kwawegen Decl., Exs. 3, 8, 13, 14, 15.

any JPMorgan defendant having submitted a claim.  Moreover, the bankruptcy court discharged all unasserted claims in the Fieldstone bankruptcy, and closed the NovaStar and ResMae bankruptcies years ago.[14]  Clearly, these bankruptcies do not support "related to" jurisdiction. *See Merrill Lynch*, 2011 U.S. Dist. LEXIS 124333, at *8-9 ("Because Merrill did not file a proof of claim before the claims bar date [in the relevant bankruptcies], Merrill fails to establish 'related to' jurisdiction").

The RAMP bankruptcy does not support "related to" jurisdiction either.  Here, JPMSI – the only defendant with purported indemnification rights related to RAMP in this action – has not submitted ***any*** proof of claim in the RAMP bankruptcy. Instead, Defendants assert that "JPMSI has already given notice to [RAMP] of ***its intention*** to pursue its indemnifications rights."  Removal Notice ¶16, and Ex. 4 (emphasis added). Plaintiffs are unaware of any authority that supports "related to" jurisdiction based on a party's mere "intention" to file a proof of claim in the future.  To the contrary, as Judge Buchwald explained in *Credit Suisse*, "the potential applicability of indemnification provisions is not by itself the equivalent of an effect of an indemnifier's bankruptcy proceedings. ***The only way defendants' indemnification claims against the Bankrupt Originators can actually affect the allocation of property among the estates' creditors is if defendants have asserted their claims against the bankruptcy estates***."  2011 WL 4965150, at *4 (emphasis added), *citing* Fed. R. Bankr. P. 3002(a) ("An unsecured creditor…must file a proof of claim or interest for the claim or interest to be allowed").  The Bankruptcy Rules require creditors to file a proof of claim on Official Form 10 to assert a claim

---

[14] Van Kwawegen Decl. at Exs. 16, 17 at 19 (order confirming Fieldstone's reorganization plan and determining that "upon the Effective Date [July 31, 2008] all Claims against the Debtor … shall be, and shall be deemed to be, discharged whether or not a proof of Claim or proof of interest was filed with respect thereto"); *Id.* at Ex. 14 (closing NovaStar bankruptcy in March 2009); *Id.* at Ex. 15 (closing ResMae bankruptcy in December 2009).

in bankruptcy. *See* Fed. R. Bankr. P. § 3001(a). Form 10 requires creditors to provide the basis of

their claim and to submit supporting documents.  As one bankruptcy court explained, "[a] proof

of claim is a special form of complaint against a debtor ... What Form 10 requires is remarkably

similar to FRCP 8(a)(2) which requires that a complaint contain a 'short and plain statement of

the claim showing that the pleader is entitled to relief'."  *In re Rockefeller Ctr. Props., Inc.*, 272

B.R. 524, 542 (S.D.N.Y. Bankr. 2000).  Proofs of claim are submitted under penalty of perjury.

*See* 18 U.S.C. § 152.[15]

JPMorgan settled its claims in the New Century bankruptcy.  On January 4, 2010,

JPMorgan entered into a settlement stipulation providing for "full resolution of the JPMorgan

Claims," including claims arising under loan purchase agreements (defined as "EPD/Breach

claims"), and represented that JPMorgan would "be entitled to no other distributions under the

Modified Plan other than with respect to the Allowed Claims."  Van Kwawegen Decl., Ex. 18 at

Ex. 1 p. 5.  The bankruptcy court approved the stipulation on January 5, 2010.  Thus, this action

will have no conceivable effect on the New Century bankruptcy.  *See Merrill Lynch*, 2011 US

Dist. LEXIS 124333, at *12 (S.D.N.Y Aug. 15, 2011) (no jurisdiction because "Merrill entered

into a court-approved stipulation with [the debtor]").

Finally, the JPMorgan defendants' claims in the AHM and ResMae bankruptcies were

filed after the bar date, disallowed and, to the extent not disallowed, fully liquidated.  JPMorgan

filed two proofs of claim in ResMae on May 12, 2008.  Van Kwawegen Decl. at Exs. 19-20.  The

bankruptcy court disallowed and expunged both claims when the trustee objected that

JPMorgan's claims were filed after the bar date.  *Id.*, Ex. 21 at 4.  Disallowed claims do not

---

[15] *See also* Form 10 made available by the RAMP claims administrator at the designated RAMP
bankruptcy website: http://www.kccllc.net/rescap (last viewed June 12, 2012).

support "related to" jurisdiction.  *See In re Chateaugay Corp.*, 213 B.R. at 640 (no "related to" jurisdiction "in absence of any articulated legal basis for an indemnity action against Debtors").

JPMorgan's proofs of claim in the AHM bankruptcy were also untimely.  Following the trustee's objection, the court disallowed and expunged the first claim.  *Id.*, Ex. 22.  The second proof of claim was submitted April 10, 2009 – fifteen months after the bar date – and the trustee has reserved the right to challenge this proof of claim as well.  *Id.*, Ex. 23.  Moreover, the bankruptcy court has confirmed a plan that fixes and liquidates the recoverable amount for claims arising out of AHM loan purchase agreements.[16]  As a result, the AHM bankruptcy does not support "related to" jurisdiction either.  *See CitiMortgage*, 2012 WL 967582, at *5 (no "related to" jurisdiction "because Defendants have failed to establish that their [] claim in the AHM bankruptcy has not already fully liquidated").

## C.    Even If the Court Were to Find "Related To" Jurisdiction, Abstention and Remand Is Warranted Pursuant to 28 U.S.C. § 1334(c)

### 1.    Remand Is Required By 28 U.S.C. § 1334(c)(2)

If the Court concludes that it has "related to" bankruptcy jurisdiction, § 1334(c)(2) requires district courts to abstain from hearing a case if "(1) the motion was timely brought; (2) the proceeding in federal court is based upon a state law claim; (3) the proceeding is related to a bankruptcy proceeding, but does not arise under Title 11 or arise in a Title 11 case; (4) section 1334 is the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6)

---

[16] *See* Van Kwawegen Decl., Exs. 24, 25 at §7.A and §7.B, §12.A (ordering confirmation of a plan pursuant to which all EPD/Breach Claims that creditors may have in connection with their purchase of AHM loans have been "liquidated and allowed as unsecured claims" based on a protocol assigned fixed percentages to the unpaid principal balance of each loan and that no other claims are allowed and claim holders are expressly prohibited from "taking any act, in any manner, in any place whatsoever, that does not confirm to, comply with, or that is inconsistent with any provision of this Plan").

the action can be timely adjudicated in state court.'"  *Allstate Ins. Co. v. Ace Sec. Corp.*, 2011 WL 3628852, at \*6 (S.D.N.Y. Aug. 17, 2011).   Moreover, "*Defendants* bear the burden of demonstrating that the test for mandatory abstention has not been met."  *Id.* at \*7, citing *Parmalat Cap.*, 639 F.3d at 582 (emphasis added).

Here, the test for mandatory abstention has been met. This Court has no independent basis for exercising jurisdiction, and the action does not involve a federal question and is not between citizens of different states because of the presence of New York plaintiffs and New York defendants.  *See supra* at § II.  In addition, Plaintiffs' abstention motion is timely under 28 U.S.C. § 1447(c), having been filed within 30 days of removal of the action.  Plaintiffs' claims are also based solely on New York state law, the action does not "arise in" a Title 11 case, and the action is not a "core" proceeding.  *See* Removal Notice at ¶13.  *See also In re Fairfield Sentry Ltd. Litig.,* 458 B.R. 665, 674 (S.D.N.Y. Sept. 19, 2011) (actions arise in a title 11 proceeding if they "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy") (citations omitted).

Further, there is no indication that the New York Supreme Court would be incapable of timely adjudicating this matter.  *See Ace*, 2011 WL 3628852, at \*10 (noting that New York Supreme Court "is currently hearing a number of cases involving both contract and common-law tort claims against mortgage loan originators [that] raise the same claims of fraud and negligent misrepresentation alleged here");  *Lifetime Brands Inc. v. Arc Int'l SA*, 2010 WL 454680, at \*2 (S.D.N.Y. Jan. 29, 2010) ("[I]t hardly lies with [defendants] to contend that state court litigation could not proceed expeditiously where it is defendants who have the greater incentive to attempt to drag things out.").  If the Court remands this action, it will be assigned to the New York Supreme Court's Commercial Division—a specialized division for complex commercial cases

with a well-deserved reputation for capable and timely resolution of similar cases. *See Credit Suisse*, 2011 WL 4965150, at *7 (noting that "[w]hile this district has seen its share of residential mortgage-backed securities cases, so has the Commercial Division") (collecting cases). *See also BLBNY* (remanding RMBS cases to New York Supreme Court), Van Kwawegen Decl., Ex. 1.

Accordingly, all mandatory abstention factors of 28 U.S.C. § 1334(c)(2) factors are met.

2.    Equitable Remand Under 28 U.S.C. § 1334(c)(1) Is Warranted

Even if the Court were to find that it has "related to" jurisdiction and that abstention is not mandatory, the Court should still remand pursuant to 28 U.S.C. § 1334(c)(1), which provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Here, none of the Defendants are bankrupt, state law issues overwhelmingly predominate, and virtually all of the Defendants have their primary place of business in New York.

"Courts in this district look to the following non-exclusive list of factors in determining whether equitable remand is appropriate: (1) the effect on the efficient administration of the bankrupt estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants." *Guccione v. Bell*, 2006 WL 2032641, at *5 (S.D.N.Y. July 20, 2006) (explaining that the bankruptcy removal statute "grants courts discretion to remand such cases on equitable grounds"), citing 28 U.S.C. §1452(b). *See also Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, 2004 WL 1048239, at *3 (S.D.N.Y.

16

May 7, 2004) (recognizing that the Court's "power to abstain or remand … is broad").  Here, these factors favor remand.

The outcome of this action will have no effect on the administration of any identified bankruptcy.  Any potential effects of this action on the administration of the cited bankruptcies are remote, contingent and uncertain because there will be no effect whatsoever unless Plaintiffs obtain a judgment against Defendants in this action that is allowed and liquidated in bankruptcy. *See CitiMortgage*, 2012 WL 967582, at *6 (ordering remand where "Defendants have not articulated any way in which this action will impact the efficient administration of the AHM bankruptcy"); *Kerusa*, 2004 WL 1048239, at *4 (ordering remand in part because "the claims of these plaintiffs will have to be resolved and either denied or reduced to a liquidated amount before there can be any effect on the bankruptcy estate").  Indeed, as detailed above, the outcome of this action will have no effect on the administration of any identified bankruptcy.

*BLBNY* is instructive.  There, defendants (including the same Defendants here) asserted "related to" jurisdiction over an action asserting New York common law fraud claims based on many of the same bankruptcies at issue here, including Accredited, Fieldstone, New Century and RAMP.[17]  Further, unlike here, one of the defendants (Merrill Lynch) had actually asserted its purported indemnification claims in the RAMP bankruptcy.[18]  Judge Kaplan declined to exercise "related to" jurisdiction because "the degree of relatedness to the bankruptcy cases is slim and there is just no good logical reason for these two cases to be in federal court."  Van Kwawegen Decl., Ex. 1 at 21.  The same is true here.

---

[17]  The Bear Stearns and JPMorgan defendants asserted "related to" jurisdiction based on the Accredited, BSRM, Fieldstone, First NLC, Fremont, New Century, Ownit, People's Choice, SouthStar and RAMP bankruptcies.  *See* Van Kwawegen Decl. at Exs. 26, 27.

[18]  Van Kwawegen Decl. at Ex. 28.

In addition, as in *BLBNY*, *CitiMortgage, Guccione* and *Kerusa,* state law issues plainly predominate. *Cf. CitiMortgage*, 2012 WL 967582, at *7 ("Significantly, while this case presents some questions of federal law, it does not require the resolution of any bankruptcy issues"). Here, none of Plaintiffs' claims involve federal law, let alone bankruptcy law.  Rather, all of Plaintiffs' claims are based on New York law.  *See Guccione*, 2006 WL 2032641, at *6 (ordering remand where "[a]t best, [plaintiff's] severance claim invokes federal law, whereas the remaining ten claims will require interpreting and applying New York law"); *Kerusa*, 2004 WL 1048239, at *2 (remanding "perfectly ordinary state-law actions that invoke no aspect of bankruptcy law, that proceed against numerous defendants who are not in bankruptcy and who are jointly and severally liable for all claims and that, even as to the bankrupt defendant, concern actions taken long before the bankruptcy filing"); *BLBNY* (finding that "[t]he state law issues here totally predominate"), Van Kwawegen Decl., Ex. 1 at 21.

Comity also favors remand as "it is well-settled that comity considerations dictate that federal courts should be hesitant to exercise jurisdiction when state issues substantially predominate." *Guccione*, 2006 WL 2032641, at *6 (citing *In re 9281 Shore Road Owners Corp.*, 214 B.R. 676, 696 (E.D.N.Y. 1997))  There is also no question that this action "can be timely adjudicated in [New York] state court at the present time." *Parmalat Cap.*, 639 F.3d at 582.

When, as here, removal does not accomplish the goal of the removal statute – namely, the efficient administration of bankruptcy actions – the case should be remanded.  Keeping this action in this federal forum would serve *none* of the purposes of the removal statute, because it would be impossible to coordinate this action with the thirteen bankruptcy proceedings pending in different courts around the country to which Defendants assert this case is related. Defendants' removal should be seen as what it is: not a genuine bankruptcy-related removal, but

mere forum shopping.  The law gives Plaintiffs' choice of a state court forum significant weight, and gives no weight to Defendants' preference for a federal forum. The Court should remand.

### D.      The Edge Act Does Not Apply

Alternatively, the Removal Notice asserts that this Court has jurisdiction based on the Edge Act.  Once again, Defendants are wrong.

The party seeking removal bears the burden of establishing that this Court has jurisdiction under 12 U.S.C. § 632 (the "Edge Act").  *See Weiss v. Hager*, 2011 WL 6425542, at *2 (S.D.N.Y. Dec. 19, 2011).  In addition, "removal statutes, and in particular the Edge Act, are construed narrowly," and "courts must carefully examine the nature of the transaction said to ground § 632 jurisdiction."  *CitiMortgage*, 2012 WL 967582, at **2-3. (citations omitted).  *See also In re Currency Conversion Fee Antitrust Litig.*, 2003 WL 22097502, at *1 (S.D.N.Y. Sept. 10, 2003) ("Removal statutes are construed narrowly and all uncertainties are resolved in favor of remand in order to promote the goals of federalism, restrict federal court jurisdiction, and support the plaintiff's right to choose the forum").

The Edge Act creates federal question jurisdiction over international banking transactions involving federally chartered banks, and states:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations … shall be deemed to arise under the laws of the United States."

12 U.S.C. § 632. Thus, "the central provision of the jurisdictional grant [in § 632] is the necessity that the transaction in question be one 'arising out of … international or foreign banking'." *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 791-92 (2d Cir.

1980) ("*CVF*").  *See also Currency Conversion*, 2003 WL 22097502, at *2 ("The Edge Act limits its jurisdiction to transactions involving international or foreign banking that can be characterized as traditional banking activities"); *Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 232 (S.D.N.Y. 1994) ("Court should satisfy itself that the suit arises out of an international or foreign transaction which falls with the realm of those 'characterized as traditional banking activities'").[19]

Here, none of Plaintiffs' claims against the only federally chartered bank in the action (Chase Bank) arise out of an international or foreign transaction – let alone a foreign or international banking transaction.  Rather, this action arose when Defendants (located in New York) sold RMBS to Plaintiff FSAM (also located in New York), while falsely representing that the RMBS were backed by mortgages that were originated in compliance with stated underwriting guidelines.  ECF No.1. Ex. 2 at ¶¶1, 13-34, 71-74, 286-289.  This domestic transaction simply did not "involve[] a ***banking arrangement*** between a federally chartered bank and a foreign party." *Lazard Freres & Co. v. First Nat'l Bank of Md.*, 1991 WL 221087, at *2 (S.D.N.Y. Oct. 15, 1991) (emphasis added).

In addition, none of Plaintiffs' claims involve federal questions or any banking law.  *See Bank of N.Y. v. Bank of Am.*, 861 F. Supp. at 232-33 (no Edge Act jurisdiction if claims are not "integrally tied to banking activity" and do not require the Court to "consider and apply principles of banking law to resolve them"); *Weiss*, 2011 WL 6425542, at *3-4 ("the banking aspect of the jurisdictional transaction must be legally significant in the case"); *Caggiano v. Pfizer, Inc.*, 384 F. Supp. 2d 689, 690 (S.D.N.Y. 2005) (no federal question jurisdiction because

---

[19] 12 U.S.C. § 632 was enacted as part of the 1933 Banking Act "as part of the comprehensive overhaul of the national banking system during the Great Depression."  *Foy v. Vanderbilt Cap. Advisors, LLC*, 09-cv-0178 (RB/MEH), 2009 WL 3672921, at *1 (D.N.M. Apr. 13, 2009).

"a jury could find defendants liable on each and every one of the eight claims without being required to determine whether any federal law has been violated").

Defendants nonetheless assert that this Court has federal question jurisdiction under the Edge Act because "18 properties underlying the loans collateralized in JPALT 2006-A7, one of the offerings at issue in this action to which [Chase Bank] was a party, where originated in the Virgin Islands." Removal Notice at ¶24. Not so.

Defendants have not shown (and cannot show) that Plaintiffs' claims "really involve a banking arrangement *between* a federally chartered bank and a foreign party." *Société d'Assurance*, 2011 WL 4056306, at *5 (emphasis added). *See also Lazard*, 1991 WL 221087, at *2 (same). Plaintiffs' claims are plainly based on the *domestic* sale of RMBS that were created, issued and sold by U.S. defendants to a U.S. plaintiff (FSAM) through the creation of U.S. trusts. ¶¶1-43, 286-289, 304-372. In fact, Defendants expressly conceded before Judge Kaplan on identical facts in *BLBNY* that Chase Bank "is not, in and of itself, alleged to have been involved in [international or foreign] transactions." Van Kwawegen Decl., Ex. 1 at 19. This is fatal to Defendants' argument. As Judge Kaplan explained, "[i]t is conceded that JPMorgan Chase Bank N.A. was not a party to any of the international banking transactions. It played no role in them. … So, I find no Edge Act jurisdiction." *Id.* at 20 (adopting Edge Act holdings of *Société d'Assurance* and *CitiMortgage*). *See also Société d'Assurance*, 2011 WL 4056306, at *5 ("Edge Act jurisdiction will not lie merely because there was a federally chartered bank involved, there were banking related activities, and there were foreign parties"); *CitiMortgage*, 2012 WL 967582, at *4 (finding "the analysis in *Société d'Assurance* to be persuasive and hold[ing] that a nationally chartered bank must have potential liability on claims arising out of transactions involving international or foreign banking … in order to support [Edge Act] jurisdiction").

Defendants' cited case, *Am. Int'l Group v. Bank of Am.*, concluded that the Edge Act does not require "a perfect match between the particular entity involved in the territorial transaction and the party against whom the claim is brought," and that "in any event, with respect to the territorial loans in Guam and the Virgin Islands, Bank of America, N.A. is being sued as a successor to Countrywide."  820 F. Supp. 2d 555, 557-58 (S.D.N.Y. 2011) ("*AIG*").  But *AIG* is easily distinguished.  Here, unlike *AIG*, the federally chartered bank (Chase Bank) is not sued in its capacity as a successor to a loan originator that extended mortgages in the Virgin Islands. ¶¶1, 26, 118, 315.

Moreover, the broader reading of *AIG* – holding that the mere presence of a federally chartered bank in an action involving foreign banking transactions is sufficient to convey Edge Act jurisdiction – is contrary to the overwhelming weight of authority in this District.[20]  *See CitiMortgage*, 2012 WL 967582, at *4 ("a nationally chartered bank must have potential liability on claims arising out of transactions involving international or foreign banking … in order to support jurisdiction under the Edge Act"); *Weiss*, 2011 WL 6425542, at *3 ("A district court cannot find that it has § 632 jurisdiction merely because there was a federally chartered bank involved, there were banking-related activities, and there were foreign parties"), *quoting Lazard*, 1991 WL 221087, at *2; *Société d'Assurance*, 2011 WL 4056306, at *5 (same); *Bank of N.Y.*, 861 F. Supp. at 232 (same).  *See also CVF*, 629 F.2d at 791-92 ("the central provision of the jurisdictional grant [in 12 U.S.C. § 632] is the necessity that ***the transaction in question*** be one 'arising out of … international or foreign banking'") (emphasis added).

---

[20] On April 25, 2012, the Second Circuit granted the *AIG* plaintiffs' request for leave to appeal pursuant to 28 U.S.C. § 1292(b).  Van Kwawegen Decl., Ex. 29.

In contrast, endorsing Defendants' reading of the Edge Act would "essentially extend federal jurisdiction to every lawsuit involving a federally-chartered bank." *Samsun Logix Corp. v. Bank of China*, 740 F. Supp. 2d 484, 493 (S.D.N.Y. 2010). "If Congress had intended this Court to have such all-encompassing jurisdiction, it could have stated its intent more easily." *Id.* at 494 (remanding to state court).[21]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court remand this action to the Supreme Court of the State of New York.

Dated: New York, New York
      July 18, 2012

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: */s/ Jeroen van Kwawegen*

    William C. Fredericks
    Jeroen van Kwawegen
    Stephen L. Brodsky
    Katherine A. Stefanou
    1285 Avenue of the Americas, 38th Floor
    New York, NY 10019
    Tel: (212) 554-1400
    Fax: (212) 554-1444

---

[21] *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200 (S.D.N.Y. 2005) does not hold differently. There, three federally chartered bank plaintiffs affiliated with Bank of America and BankAmerica invoked Edge Act jurisdiction over a dispute involving a three-stage acquisition of a Brazilian bank (the "BL Bank"). *Id.* at 207. Plaintiff sued the sellers of BL Bank for embezzling millions of dollars from BL Bank during the acquisition, asserting claims for fraudulent inducement, conversion, breach of fiduciary duty and breach of contract. *Id.* at 212. The court held that the Edge Act applied but only after finding that the federally chartered bank plaintiffs had ***a direct connection*** with the transaction giving rise to the claims—both as acquirers of the Brazilian bank (through wholly-owned SPVs) and as direct beneficiaries of the representations and warranties that formed the basis for their breach of contract claim. *Id.* at 210. Moreover, the court expressly found that the fraud was "accomplished in part through overdrafts and inter-bank transfers of BL Bank funds into the United States, fraudulent loans, and purchases of bogus certificates of deposit, all of which are clearly foreign or international banking transactions." *Id.* at 215.

bill@blbglaw.com
jeroen@blbglaw.com
stephen.brodsky@blbglaw.com
katherine.stefanou@blglaw.com

- and -

Timothy A. DeLange (*pro hac vice*)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323
timothyd@blbglaw.com

*Counsel for Plaintiffs Dexia SA/NV, Dexia Holdings, Inc., FSA Asset Management LLC, Dexia Crédit Local SA*