UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEXIA SA/NV, DEXIA HOLDINGS, INC., FSA ASSET MANAGEMENT LLC and DEXIA CRÉDIT LOCAL SA,<br><br>     *Plaintiffs*,<br><br>     v.<br><br>BEAR STEARNS & CO. INC., THE BEAR STEARNS COMPANIES, INC., BEAR STEARNS ASSET BACKED SECURITIES I LLC, EMC MORTGAGE LLC (f/k/a EMC MORTGAGE CORPORATION), STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., J.P. MORGAN ACCEPTANCE CORPORATION I, J.P. MORGAN MORTGAGE ACQUISITION CORPORATION, J.P. MORGAN SECURITIES LLC (f/k/a JPMORGAN SECURITIES INC.), WAMU ASSET ACCEPTANCE CORP., WAMU CAPITAL CORP., WAMU MORTGAGE SECURITIES CORP., JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A.,<br><br>     *Defendants*. | ECF Case<br><br>No. 12-cv-4761 (JSR) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

August 27, 2012

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR FRAUD ................... 1

    A. Plaintiffs Fail to Plead Fraud Adequately. ................................................... 1

    B. Plaintiffs Fail to Plead Any Actionable Misrepresentation. ........................ 4

        1. Loan Origination and Underwriting Standards. ............................... 4

        2. Occupancy Status. ............................................................................ 6

        3. Appraisals and Credit Ratings. ........................................................ 6

    C. Plaintiffs Fail to Plead the Remaining Elements of a Fraud Claim. ............ 7

II. PLAINTIFFS DEXIA SA/NV, DEXIA HOLDINGS, INC. AND DEXIA CRÉDIT LOCAL SA LACK STANDING ............................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc., 651 F. Supp. 2d 155
 (S.D.N.Y. 2009) ...................................................................................................................9

Allied Irish Banks, P.L.C. v. Bank of Am., N.A., No. 03 Civ. 3748 (DAB), 2006 WL
 278138 (S.D.N.Y. Feb. 2, 2006) .........................................................................................8

Allstate Ins. Co. v. Countrywide Fin. Corp., 824 F. Supp. 2d 1164 (C.D. Cal. 2011) ...................4

Barneli & Cie S.A. v. Dutch Book Funds, SPC, Ltd., No. 600871/08, 2010 N.Y. Misc.
 LEXIS 4270 (N.Y. Sup. Ct. Aug. 9, 2010) .........................................................................8

Chill v. Gen. Elec. Co., 101 F.3d 263 (2d Cir. 1996) ....................................................................9

China Dev. Indus. Bank v. Morgan Stanley, No. 650957/2010, 2011 N.Y. Misc. LEXIS
 1808 (N.Y. Sup. Ct. Feb. 25, 2011) ....................................................................................7

Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991) ......................................5

DeMarco v. Robertson Stephens Inc., 318 F. Supp. 2d 110 (S.D.N.Y. 2004) ...............................7

Dexia Holdings, Inc. v. Countrywide Fin. Corp., No.2:11-cv-07165-MRP-MAN, 2012
 WL 1798997 (C.D. Cal. Feb. 17, 2012) ..............................................................................4

Dexia SA/NV v. Deutsche Bank AG, No. 11 Civ 5672-JSR (S.D.N.Y. 1011) ..............................9

Dodona I, LLC v. Goldman Sachs & Co., 847 F. Supp 2d 624 (S.D.N.Y 2012) ..........................3

Emps. Ret. Sys. of the Gov't of the Virgin Islands v. J.P.Morgan Chase & Co., 804 F.
 Supp. 2d 141 (S.D.N.Y. 2011) ............................................................................................3

Footbridge Ltd. v. Countrywide Home Loans, Inc., No. 09 Civ. 4050, 2010 WL 3790810
 (S.D.N.Y. Sept. 28, 2010) ............................................................................................passim

Global Minerals & Metals Corp. v. Holme, 35 A.D.3d 93 (N.Y. App. Div. 2006) .......................7

Hunt v. Enzo Biochem, 530 F. Supp. 2d 580 (S.D.N.Y. 2008) ......................................................8

In re Bear Stearns Cos., Inc. Sec. Deriv., and ERISA Litig., 763 F. Supp. 2d 423
 (S.D.N.Y. 2011) ..................................................................................................................9

In re Bear Stearns Mortg. Pass-Through Certificates Litig., No. 08 CIV.
 8093(LTS)(KNF), 2012 WL 1076216 (S.D.N.Y. March 30, 2012) ................................6, 7

In re Countrywide Fin. Corp. Sec. Litig., 588 F. Supp. 2d 1132 (C.D. Cal. 2008) ........................4

In re Oxford Health Plans, Inc., 187 F.R.D. 133 (S.D.N.Y. 1999) ................................................... 7

In re SLM Corp. Sec. Litig., 740 F. Supp. 2d 542 (S.D.N.Y. 2010) ................................................ 6

Landesbank Baden-Württemberg v. Goldman Sachs & Co., 821 F. Supp. 2d 616
    (S.D.N.Y. 2011) ................................................................................................................. 1, 2, 6

MBIA Ins. Corp. v. Countrywide Home Loans, Inc., 87 A.D. 287 (N.Y. App. Div., 1st
    Dep't, 2011) ............................................................................................................................ 3

N.J. Carpenters Health Fund v. NovaStar Mortg., Inc., No. 1:08-cv-05310, ECF No. 135,
    slip op. at 11 (S.D.N.Y. Mar. 29, 2012) .............................................................................. 1, 2

Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
    Commerce, 694 F. Supp. 2d 287 (S.D.N.Y. 2010) ................................................................. 8

Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc., 714
    F. Supp. 2d 475 (S.D.N.Y. 2010) ........................................................................................... 5

S.E.C. v. Mudd, No. 11 Civ. 09202 (PAC), 2012 WL 3306961 (S.D.N.Y. Aug. 10, 2012) ........... 9

Tsereteli v. Residential Asset Securitization Trust 2006-A8, 692 F. Supp. 2d 387
    (S.D.N.Y. 2010) ...................................................................................................................... 3

**Statutes & Rules**

Rule 8(a) ......................................................................................................................................... 3

Rule 9(b) ................................................................................................................................. passim

**Other Authorities**

Written Testimony of V. Beal Before the FCIC, Sept. 23, 2010, at 8, available at
    http://fcic-static.law.stanford.edu/cdn_media/fcic-testimony/2010-0923-Beal.pdf. .................. 5

I.  **PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR FRAUD**

    A.  **Plaintiffs Fail to Plead Fraud Adequately.**

It is undisputed that Plaintiffs' common law fraud claims are subject to the heightened pleading standard of Rule 9(b). (Mot. at 11; Opp. at 14-15). As Defendants demonstrated in their opening brief, under that standard, Plaintiffs are required to do more than simply make general allegations about Defendants' securitization practices at the time of Plaintiffs' investments in the Offerings. (Mot. at 11-13.) Specifically, to survive a motion to dismiss, a plaintiff asserting claims for common law fraud purportedly arising out of representations about specific offerings must tie its allegations of general misconduct to the specific offerings at issue. Defendants cited three cases from this District that explicitly support that proposition.[1] Plaintiffs have failed properly to distinguish any of those cases from their own case, nor have they offered any authority from this District to the contrary.

Plaintiffs argue that NovaStar II should not be followed here because the complaint in NovaStar II did not cite "internal documents or witness statements attributed to persons with [knowledge of] the allegations". (Opp. at 16.) In fact, the complaint in NovaStar II contained numerous "allegations of former employees who were engaged in origination of [defendant's] residential mortgages at the time the . . . loans [in the deal at issue] were underwritten". NovaStar II at *10-11; see also id., ECF 120 (Corrected Second Amended Complaint), ¶¶ 62-89. And the critical holding in Judge Batts' decision is that such "general allegations and anecdotes of former employees do not indicate that there were material misstatements or omissions in the

---

[1] See Mot. at 12-13 (citing N.J. Carpenters Health Fund v. NovaStar Mortg., Inc., No. 1:08-cv-05310, ECF No. 135, slip op. at 11 (S.D.N.Y. Mar. 29, 2012) ("NovaStar II"); Footbridge Ltd. v. Countrywide Home Loans, Inc., No. 09 Civ. 4050, 2010 WL 3790810, at *13 (S.D.N.Y. Sept. 28, 2010) ("Footbridge"); and Landesbank Baden-Württemberg v. Goldman Sachs & Co., 821 F. Supp. 2d 616, 622 (S.D.N.Y. 2011) ("Landesbank"), aff'd, No. 11-4443, 2012 WL 1352590 (2d Cir. Apr. 19, 2012).

offering documents concerning the origination of the loans backing the . . . Offering [at issue]." NovaStar II at *11.  The Complaint here should be dismissed for the same reasons the NovaStar II complaint was dismissed:  because "no interviewed employee ties a particular loan to a deviation from the underwriting guidelines for the collateral backing the . . . Offering[s] [at issue]"; because "[the Complaint] does not cite one specific loan that should not have been included in the  . . . Offering[s] [at issue]"; and because "Plaintiff does not cite any example of a loan that failed to meet the underwriting guidelines and ended up in the . . . loan pool [backing the Offerings at issue], let alone the specific loans which secured Plaintiff's investment in the [particular] Certificates [Plaintiff purchased]."  Id. at *11.

Plaintiffs' attempt to distinguish Footbridge and Landesbank is equally meritless.  Plaintiffs contention that the complaints in those cases, unlike the Complaint here, "do not allege delinquencies in the loan pools backing the RMBS" at issue is incorrect.  (Opp. at 16.)  In Footbridge, the plaintiffs alleged that, as a result of Countrywide's misconduct, "[plaintiffs'] Securities began to experience 'high rates of delinquency and default' . . . [which] caused a 'drastic and rapid loss in [the] value' of plaintiffs' Securities."  Footbridge at *4; see also id., ECF No. 32 (Second Amended Complaint), ¶ 223.  Similarly, in Landesbank, the plaintiff alleged that "the Notes [purchased by plaintiff now] have 'junk' ratings . . . , reflecting the delinquencies that have continued to occur in the collateral portfolio."  See Landesbank, ECF No. 5 (Amended Complaint), ¶ 95.  In both cases, the courts held that plaintiffs' general allegations about improper conduct at the defendant entities coupled with allegations of high rates of delinquencies in the loans backing the plaintiffs' certificates were incapable of supporting a claim for fraud under Rule 9(b).  See Landesbank at 621-23; Footbridge at *10-12.  As Judge Castel held in Footbridge, "such allegations are insufficient to set forth a plausible

claim of fraud based on the heightened pleading requirements of Rule 9(b)" because they fail to raise "more than a sheer possibility that [a] defendant has acted unlawfully". Footbridge at *12.

None of the cases from this District cited by Plaintiffs absolves them of their obligation under Rule 9(b) to allege particular facts about the particular investments with respect to which they claim to have been defrauded.[2] Virgin Islands and Tsereteli are inapposite because those cases concerned Section 11 claims that were not subject to the heightened pleading standard of Rule 9(b).[3] In Dodona I, unlike here, the Complaint "contain[ed] particularized allegations about how . . . [Defendant's] officers were on notice that the [two particular offerings at issue] were 'junk'." 847 F. Supp. 2d at 643. And in MBIA, "the fraud claim . . . list[ed] 4,689 loans that allegedly failed to comply with Countrywide's underwriting guidelines". 87 A.D. at 295. Plaintiffs here have made no such particularized allegations.

Nor is Plaintiffs' position supported by any of the three Countrywide decisions they cite from Judge Pfaelzer of the Central District of California—each of which simply applies the holding of the preceding decision.[4] Countrywide I is inapposite because it did not concern MBS

---

[2] See Opp. at 15-16 (citing Emps. Ret. Sys. of the Gov't of the Virgin Islands v. J.P.Morgan Chase & Co., 804 F. Supp. 2d 141 (S.D.N.Y. 2011) ("Virgin Islands"); Tsereteli v. Residential Asset Securitization Trust 2006-A8, 692 F. Supp. 2d 387 (S.D.N.Y. 2010) ("Tsereteli"); Dodona I, LLC v. Goldman Sachs & Co., 847 F. Supp. 2d 624 (S.D.N.Y 2012) ("Dodona I"); and MBIA Ins. Corp. v. Countrywide Home Loans, Inc., 87 A.D. 287 (N.Y. App. Div. 2011).

[3] In Virgin Islands, Judge Koeltl explicitly noted that "unless a plaintiff specifically pleads a claim of fraud, a claim under Section 11 . . . is 'not subject to the heightened pleading standard of [Rule] 9(b) . . . [r]ather, it is subject to the 'short and plain statement' requirements of Rule 8(a), and thus places 'a relatively minimal burden on a plaintiff'". 804 F. Supp. 2d at 152. And in Tsereteli, in which all but one of the plaintiffs' claims were dismissed, the Court held that a purportedly damaging report about the defendants' origination practices "does not even remotely support the allegation that the loans in the pool underlying [the plaintiffs'] Certificates" were affected by those practices where there is "[no] suggestion that the loans [at issue in the report] were in the pool underlying the Certificates". 692 F. Supp. 2d at 394.

[4] In re Countrywide Fin. Corp. Sec. Litig., 588 F. Supp. 2d 1132 (C.D. Cal. 2008) ("Countrywide I"); Allstate Ins. Co. v. Countrywide Fin. Corp., 824 F. Supp. 2d 1164 (C.D. Cal. 2011)

3

purchases (see Countrywide I at 1144); rather, that suit was brought by investors in Countrywide's business, whose "investments' values depend in great part on the soundness of Countrywide's core mortgage-related operations", so plaintiffs' general allegations about Countrywide's business practices were held to be sufficient.  Id.  Allstate I is inapposite because it concerned, in relevant part, the scope of Defendants' representations, whereas the instant case concerns the scope of the misconduct alleged by Plaintiffs; specifically, whether the general allegations of misconduct extend to the specific Offerings at issue.  Compare Allstate I at 1184 n.23 with Opp. at 15.[5]

### B. Plaintiffs Fail to Plead Any Actionable Misrepresentation.

#### 1. Loan Origination and Underwriting Standards.

In their opposition brief, Plaintiffs attempt to characterize the allegations in the Complaint as illustrative of a "wholesale abandonment" of underwriting standards.  (Opp. at 1.) In this manner, Plaintiffs try to remedy their failure to plead any facts about the underwriting of the specific loans in the Offerings at issue.  (Id. at 15-16.)  The Complaint, however, does not support Plaintiffs' theory of wholesale abandonment.  Rather, the Complaint alleges that Defendants made exceptions to, "loosened", or were too flexible with, their underwriting guidelines.  (See, e.g., Compl. ¶¶ 126-39, 261, 296).  Under Rule 9(b), such allegations are insufficient to plead wholesale abandonment.  See Footbridge, 2010 WL 3790810, at *12 (where the offering documents disclosed that exceptions would be made, plaintiff's claim that "defendants were too flexible in the underwriting decisions [is, w]ithout more, . . . insufficient to set forth a plausible claim of fraud based on the heightened pleading requirements of Rule 9(b)").

---

("Allstate I"); Dexia Holdings, Inc. v. Countrywide Fin. Corp., No. 2:11-cv-07165-MRP-MAN, 2012 WL 1798997 (C.D. Cal. Feb. 17, 2012) ("Dexia Holdings").
[5] In Dexia Holdings, Judge Pfaelzer deemed the allegations to be materially identical to the allegations in Allstate I and applied her holding from that case without further analysis.  See 2012 WL 1798997, at *1.

And as with other of the purportedly contrary authorities Plaintiffs cite, <u>Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc.</u> does not involve the heightened pleading standard of Rule 9(b) and is thus inapposite. 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010).

Plaintiffs' allegations regarding the Clayton Report are similarly insufficient to support Plaintiffs' theory. (Compl. ¶¶ 49, 72-76, 137, 147, 150, 299.) <u>First</u>, according to the Report, Clayton "rejected" only 16% of loans earmarked for Bear/EMC deals (11,771 loans out of 72,379), 27% of loans earmarked for JPM deals (6,325 loans out of 23,668), and 27% of loans earmarked for WaMu deals (9,408 loans out of 35,008).[6] If anything, those numbers show that underwriting guidelines had <u>not</u> been abandoned and were complied with 75-80% of the time. <u>Second</u>, Clayton itself has submitted to the FCIC that it does not know whether any particular loan it reviewed was ultimately securitized[7], which fatally undermines Plaintiffs' claim that, according to the Clayton Report, Defendants "waived [defective loans] in" to their securitizations. (<u>See, e.g.</u>, Opp. at 1.) But even Plaintiffs' flawed understanding of the Clayton Report does not support a finding of wholesale abandonment: the loans that were purportedly defective <u>and</u> "waived in" by Bear/EMC represent only 7% of the total Bear/EMC loans reviewed by Clayton (4,923 of 72,379; <u>see</u> Clayton Report at 2); for JPMorgan, that figure is 14% (3,238 of 23,668; <u>id.</u> at 7) and for WaMu, 8% (2,716 of 35,008; <u>id.</u> at 9). Such purported rates of deviation are consistent with the risk disclosures in the Offering Documents. (Mot. at

---

[6] <u>See</u> Clayton Report, attached as Ex. 1 to Declaration of Daniel Slifkin dated Aug. 27, 2012, at 2, 7, 9. The Court may take judicial notice of the Clayton Report because Plaintiffs relied upon it in their Complaint. <u>See</u> <u>Cortec Industries, Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991); <u>see, e.g.</u>, Compl. ¶ 72-76, 137, 147, 150.

[7] Written Testimony of V. Beal Before the FCIC, Sept. 23, 2010, at 8, available at http://fcic-static.law.stanford.edu/cdn_media/fcic-testimony/2010-0923-Beal.pdf.

14-15.)[8]  Third, Plaintiffs have failed to allege any connection between the loans reviewed in the Clayton Report and those collateralizing the Offerings at issue.  (See Mot. at 13 (citing cases).)

### 2. Occupancy Status.

While it may be true that "general disclaimers do not protect a defendant from liability if a statement was knowingly false when made" (Opp. at 19-20), Plaintiffs allege no facts to support the inference that Defendants knew that the reported occupancy status information was false.  Plaintiffs' general allegations that Defendants knew their origination practices would increase the occurrence of non-owner occupied mortgages (Opp. at 20; Compl. ¶¶ 246, 268), largely based on allegations of Defendants' sophistication and experience in the securitization industry (Compl. ¶¶ 44-51), are insufficient.  See Footbridge, 2010 WL 3790810, at *9 (occupancy fraud allegations based on originator's "sophisticat[ion]" are insufficient).

### 3. Appraisals and Credit Ratings.

Plaintiffs allege that "the detailed allegations of the Complaint squarely support an inference that Defendants did not truly believe the LTV ratios that they included in the Offering Materials."  (Opp. at 21.)  That is wrong.  Allegations that appraisals were not reviewed and that appraisers felt pressure to "get [loans] through" (Compl. ¶¶ 132, 277)  are not equivalent to an allegation that Defendants knew the LTV ratios were false.  The cases cited by Plaintiff contain far more specific evidence that the disclosed opinions were not truly held by the speaker.  See DeMarco v. Robertson Stephens Inc., 318 F. Supp. 2d 110, 117 (S.D.N.Y. 2004) (Defendant "deliberately misrepresented his actual opinion" by publishing a report valuing stock at $23.94

---

[8] In In re Bear Stearns Mortg. Pass-Through Certificates Litig., ("In re Bear"), upon which Plaintiffs rely, Judge Swain noted that repurchase clauses also "could be read as an acknowledgement of occasional underwriting violations".  No. 08 CIV. 8093(LTS)(KNF), 2012 WL 1076216, at *22 (S.D.N.Y. March 30, 2012).  Judge Swain held that repurchase clauses do not alone put an investor on notice of a "pandemic of violations", but Plaintiffs here have failed to allege a pandemic of violations in the Offerings at issue.  (Opp. at 17-18.)

within a week of telling an internal committee that the stock was valued at only half that amount); In re Oxford Health Plans, Inc., 187 F.R.D. 133, 139-41 (S.D.N.Y. 1999) (defendants attended various meetings and received several reports regarding unreliable data underlying company's financial reports).

With respect to credit ratings, Plaintiffs rely on In re Bear, but fail to mention that Judge Swain dismissed claims based on ratings. Judge Swain held that allegations that "information provided [by defendant] to the Rating Agencies regarding the loans underlying the pools at issue was faulty and inaccurate" were insufficient to demonstrate that defendant was aware the ratings were inaccurate when it released the Offering Documents. Id. 2012 WL 1076216, at *19.[9] Plaintiffs make the very same—insufficient—allegations here (Compl. ¶ 216).

      **C.**    **Plaintiffs Fail to Plead the Remaining Elements of a Fraud Claim.**

First, as Defendants demonstrated in their opening brief, Plaintiffs have failed to plead reasonable reliance because Plaintiffs have failed to allege that they adequately discharged their affirmative duty, as sophisticated investors, to conduct due diligence and verify the information they received from Defendants. (Mot. at 20-21.) Global Minerals & Metals Corp. v. Holme, 35 A.D.3d 93, 100 (N.Y. App. Div. 2006) (a sophisticated party must make "further inquiry" if it has any reason to doubt representations). In their opposition brief, Plaintiffs argue that in making their $1.6 billion investment in the Certificates, they were entitled to rely on Defendants' representations about the risks of that investment without further investigation because Plaintiffs "lacked 'means of ascertaining the truth'" about the risks. (Opp. at 25.) Indisputably, however, Plaintiffs could have analyzed default and other risks associated with the Certificates and similar

---

[9] Plaintiffs' other cited authorites are similarly inapposite, as the complaints in those cases alleged defendant's knowledge of inaccurate ratings in far greater detail. See, e.g., China Dev. Indus. Bank v. Morgan Stanley, No. 650957/2010, 2011 N.Y. Misc. LEXIS 1808, at *6-7 (N.Y. Sup. Ct. Feb. 25, 2011) (alleging defendants knew CDOs were rated using models no longer in use and had paid ratings agencies excessively in return for assistance in structuring the product).

7

RMBS—as the Offering Documents advised them to do—by relying on monthly remittance reports, publicly available information regarding RMBS and the relevant originators, Plaintiffs' specialized knowledge about RMBS and the originators, and RMBS performance data provided by third-party vendors. (Mot. at 20-21.) Accordingly, Plaintiffs are not similarly situated to the plaintiffs in the cases upon which Plaintiffs seek to rely, and were not entitled to rely only on Defendants' representations about the risks associated with the Certificates. (See Opp. at 25 (citing Hunt v. Enzo Biochem, 530 F. Supp. 2d 580, 583, 599 (S.D.N.Y. 2008) (plaintiffs could not verify defendants' asserted "efficacy of . . . medical treatment"); Barneli & Cie S.A. v. Dutch Book Funds, SPC, Ltd., No. 600871/08, 2010 N.Y. Misc. LEXIS 4270, at *27 (N.Y. Sup. Ct. Aug. 9, 2010) (plaintiffs could not verify defendants' investing "algorithm", the "nature and existence of [which] was peculiarly within the Defendants' knowledge"); Allied Irish Banks, P.L.C. v. Bank of Am., N.A., No. 03 Civ. 3748 (DAB), 2006 WL 278138, at *9 (S.D.N.Y. Feb. 2, 2006) (plaintiff could not verify defendants' "omitted information from daily trade recaps" because "Plaintiff was not alerted to [the existence of] that data")).)

Second, Plaintiffs have failed to demonstrate that their allegations with respect to scienter are legally sufficient. Plaintiffs' continued reliance on profit motive to establish scienter is misplaced, because "it is not sufficient to allege goals that are possessed by virtually all corporate insiders". See Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce, 694 F. Supp. 2d 287, 298 (S.D.N.Y. 2010) (internal quotation marks omitted); see also Chill v. Gen. Elec. Co., 101 F.3d 263, 270 (2d Cir. 1996) ("extraordinary" profit is insufficient to suggest that defendant "was reckless in failing to further investigate").[10]

---

[10] Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc., 651 F. Supp. 2d 155 (S.D.N.Y. 2009), relied on by Plaintiffs (Opp. at 27), is distinguishable because the plaintiffs' scienter allegations were far more specific. 651 F. Supp. 2d at 179-80.

Similarly misplaced is Plaintiffs' reliance on the magnitude of the alleged fraud. (Opp. at 27-30 citing In re Bear Stearns Cos., Inc. Sec. Deriv., and ERISA Litig., 763 F. Supp. 2d 423, 517 (S.D.N.Y. 2011) ("the size of the fraud alone does not create an inference of scienter"; plaintiffs also provided "detailed allegations regarding the nature and extent of [the] fraudulent accounting").) Plaintiffs' remaining scienter allegations can be reduced to the following: in 2006 and 2007, Defendants dealt regularly with certain non-party originators of loans in the Offerings; various reports or investigations from 2008 onwards suggest that those non-party originators were engaging in unsound origination practices; therefore Defendants must have known, or were reckless in not knowing, that the specific loans originated by those non-party originators and securitized in the Offerings were defective. Such allegations of fraud by hindsight are insufficient as a matter of law. See Footbridge at *19. In any case, "[r]ecklessness sufficient to establish scienter [requires] an extreme departure from the standards of ordinary care", which Plaintiffs have plainly failed to allege. S.E.C. v. Mudd, No. 11 Civ. 09202 (PAC), 2012 WL 3306961, at *5, *11-12 (S.D.N.Y. Aug. 10, 2012) (executives represented that Fannie Mae had minimal subprime exposure, when they knew it had billions of dollars of exposure).[11]

Third, Plaintiffs have failed to adequately plead loss causation because they have failed to allege losses in addition to or inconsistent with marketwide losses suffered by other RMBS investors in the wake of the global financial crisis. (Mot. at 25-26.) Plaintiffs attempt to argue that the purportedly diminished value of the Certificates today is indicative of their "true

---

[11] Plaintiffs are flatly wrong in suggesting that their Complaint differs from that dismissed in Dexia v. Deutsche Bank. Compare Compl. at ¶ 43, No. 11-cv-5672(JSR), ECF No. 11 (Sep. 15, 2011) ("Deutsche Bank's activities in the subprime mortgage market also included exploiting its unique knowledge of the origination practices of subprime lenders") with Compl. at ¶ 173, No. 12-cv-4761(JSR), ECF No. 1, Ex. 2 (May 18, 2012) ("In addition to having unique access and knowledge about the loan origination and securitization practices of the sponsors . . . , Defendants also had very close relationships with other financial institutions that originated loans for securitizations at issue").

9

investment quality" at the time of purchase (Opp. at 30), without accounting for the intervening crash in the housing market. In their opposition brief, Plaintiffs do not dispute that the housing crisis was a cause of their purported losses, but contend that "Defendants were active participants in the collapse of the housing market" (id. at 31) and thus Defendants are still to blame for the losses. But the Complaint is devoid of any attempt to quantify Defendants' role in the alleged housing crisis and Defendants' culpability for the losses caused thereby. As such, Plaintiffs' theory of loss causation is fundamentally flawed.

## II.     PLAINTIFFS DEXIA SA/NV, DEXIA HOLDINGS, INC. AND DEXIA CRÉDIT LOCAL SA LACK STANDING

As Defendants argued in their opening brief, an assignor of a claim and the assignee of that claim cannot both have standing to assert the assigned claim. (Mot. at 30-31.) Plaintiffs all but concede this in their opposition brief, but assert that they should be permitted to "plead their claims in the alternative until the nature and validity of the assignments are finally determined". (Opp. at 35.) But we know that either the assignor or the assignees necessarily lack standing, and on a motion to dismiss, one looks to the pleadings to determine which one it is. Because Plaintiff does not allege that the assignment of the claim from FSAM to the other Plaintiffs was valid, or, alternatively, because Plaintiff disavows that allegation, the Court should dismiss the other Plaintiffs from the case for lack of standing.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint should be granted, and the Amended Complaint should be dismissed.

August 27, 2012

                        CRAVATH, SWAINE & MOORE LLP,

       by

                            /s/ Daniel Slifkin
                             Daniel Slifkin
                            J. Wesley Earnhardt
                            Members of the Firm

                      Worldwide Plaza
                        825 Eighth Avenue
                       New York, NY 10019
                          (212) 474-1000
                            dslifkin@cravath.com
                            wearnhardt@cravath.com

*Attorneys for Defendants Bear Stearns & Co. Inc. (now known as J.P. Morgan Securities LLC), The Bear Stearns Companies, Inc. (now known as The Bear Stearns Companies LLC), Bear Stearns Asset Backed Securities I LLC, EMC Mortgage LLC (f/k/a EMC Mortgage Corporation), Structured Asset Mortgage Investments II Inc., J.P. Morgan Acceptance Corporation I, J.P. Morgan Mortgage Acquisition Corporation, J.P. Morgan Securities LLC (f/k/a JPMorgan Securities Inc.), WaMu Asset Acceptance Corp., WaMu Capital Corp., Washington Mutual Mortgage Securities Corp., JPMorgan Chase & Co., and JPMorgan Chase Bank, N.A.*